IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

SHAUN C. KENNEDY AND
COURTNEY R PEREZ,

     Plaintiffs,

v.                                                                      Case No. 23-cv-0992 KG/JHR

THE BOARD OF COUNTY COMMISSIONERS
OF SANTA FE COUNTY,

     Defendant.

<u>MEMORANDUM OPINION AND ORDER</u>

     This matter comes before the Court on Plaintiffs' Second Application for Temporary Restraining Order and Motion for Preliminary Injunction, (Doc. 22), filed November 21, 2023. Defendant filed its response, (Doc. 32), on December 7, 2023.  Plaintiffs filed their reply (Doc. 34) on December 11, 2023.

     In Plaintiffs' Second Amended Complaint for Declaratory Judgment and Injunctive Relief, they allege that the Board of County Commissioners of Santa Fe County (Board or Defendant) unconstitutionally and unlawfully adopted ordinances regulating Short-Term Rentals (STRs) in Santa Fe County.  (Doc. 29) at 1, 11.  The Court held a hearing on this matter on Tuesday, December 12, 2023, at which counsel for both parties appeared and argued.  For the reasons explained below, the Court denies Plaintiffs' request for injunctive relief.

*I.*    *Background*

     This case stems from Santa Fe County ordinances regulating STRs.  On October 25, 2022, the Board of County Commissioners of Santa Fe County adopted Ordinance No. 2022-07 (Ordinance), which regulates STRs in Santa Fe County.  (Doc. 22-3) at 1.  The overarching purpose of the Ordinance is to "promote the health and general welfare of the County."  (*Id.*)

1

at 3.  Relevant to this case, the Ordinance distinguishes between "Owner-Occupied" STRs and "Non-Owner Occupied" STRs.  *See* (*id.*) at 5–10.  The Ordinance prohibits a person from operating a Non-Owner Occupied STR without a Business License.  (*Id.*) at 5.  At the same time, the Ordinance includes a temporary, one-year moratorium on submitting, accepting, processing, or approving STR Business Licenses for Non-Owner Occupied STR properties acquired after November 25, 2022, the Ordinance's effective date.  (*Id.*) at 5–6, 10.  The Ordinance was initially set to expire on November 25, 2023.

On October 24, 2023, the Board circulated a draft of a proposed Emergency Ordinance Amending Ordinance No. 2022-07 (Draft Ordinance), which included a three-month extension of the moratorium, pushing the moratorium's expiration back to February 26, 2024.  *See* (Docs. 22-7 and 22-8).  Notably, the Draft Ordinance included a "Declaration of Emergency." (Doc. 22-8).  The purpose of the emergency declaration was to prevent a lapse between the expiration of the previous Ordinance's moratorium and the extension of the Draft Ordinance's moratorium, (Doc. 22-11).

On November 3, 2023, the Board published the title and general summary of the Draft Ordinance in the Albuquerque Journal.  (Docs. 15-1 and 15-2).  At a special meeting on November 17, 2023, the Board adopted the Draft Ordinance (hereinafter Amended Ordinance), thereby amending the earlier Ordinance eight days before the one-year moratorium was set to expire.

In April 2023—after the Ordinance went into effect—Plaintiffs, who are citizens of Colorado,  purchased property in Santa Fe County.  (Doc. 29) at ¶¶ 5–6.  Plaintiffs expected to use their property as a Non-Owner Occupied STR for the foreseeable future.  (*Id.*) at ¶ 44.

Plaintiffs, however, cannot receive an STR license as long as the moratorium on Non-Owner Occupied STRs remains in effect.

Plaintiffs argue that they are entitled to injunctive relief because: (1) the process by which the Amended Ordinance was adopted violated New Mexico law; and (2) the Ordinance and Amended Ordinance's (collectively, Ordinances) moratorium violates the dormant Commerce Clause. (Doc. 22) at 9.

At the hearing on December 12, 2023, the Court ruled on and addressed Plaintiffs' claims that the Board's adoption of the Amended Ordinance violated New Mexico law. For the reasons stated at the hearing, the Court denied Plaintiffs injunctive relief as to those claims. The Court, however, took Plaintiffs' request for injunctive relief as to their dormant Commerce Clause claim under advisement.

II.      *Standards of Law*

    *A. Injunctive Relief*

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008)). As "an extraordinary remedy, the right to relief must be clear and unequivocal." *Hunter v. Hirsig*, 614 F. Appx. 960, 962 (10th Cir. 2015) (quoting *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1256 (10th Cir. 2003)). The grant of a preliminary injunction is "the exception rather than the rule." *Gen. Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1226 (10th Cir. 2007) (quoting *GTE Corp. v. Williams*, 731 F.2d 676, 678 (10th Cir. 1984)); *see also United States ex rel. Citizen Band Potawatomi Indian Tribe of Okla. v. Enter. Mgmt. Consultants, Inc.*, 883 F.2d 886, 888–89 (10th Cir.1989) ("Because it constitutes drastic relief to

be provided with caution, a preliminary injunction should be granted only in cases where the necessity for it is clearly established.").

To prevail on a preliminary injunction, a party must show that: "(1) it has a substantial likelihood of prevailing on the merits; (2) it will suffer irreparable injury if it is denied the injunction; (3) its threatened injury outweighs the injury that the opposing party will suffer under the injunction; and (4) an injunction would not be adverse to the public interest."[1] *Country Kids 'N City Slicks, Inc. v. Sheen*, 77 F.3d 1280, 1283 (10th Cir. 1996).  It is the movant's burden to "establish that each of these factors tips in his or her favor." *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003).  Likelihood-of-success-on-the-merits and irreparable-injury factors "are the most critical."  *Nken v. Holder*, 556 U.S. 418, 434 (2009).

Since "the limited purpose of a preliminary injunction 'is merely to preserve the relative positions of the parties until a trial on the merits can be held,'" the Tenth Circuit has identified three preliminary injunctions that it disfavors.  *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258–59 (quoting *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981)).

> [A] disfavored injunction may exhibit any of three characteristics: (1) it mandates action (rather than prohibiting it), (2) it changes the status quo, or (3) it grants all the relief that the moving party could expect from a trial win.  To get a disfavored injunction, the moving party faces a heavier burden on the likelihood-of-success-on-the-merits and the balance-of-harms factors: [it] must make a strong showing that these tilt in [its] favor.

*Free the Nipple–Fort Collins v. City of Fort Collins, Colo.*, 916 F.3d 792, 797 (10th Cir. 2019) (internal quotation marks and citations omitted).  These disfavored injunctions "require more of the parties who request them."  *Id.* (citing *Schrier v. Univ. of Colo.*, 427

---

[1] The factors for a preliminary injunction and a temporary restraining order "are essentially the same."  *People's Trust Fed. Credit Union v. Nat'l Credit Union Admin. Bd.*, 350 F.Supp. 3d 1129, 1138 (D.N.M. 2018) (citations omitted).

F.3d at 1258–59 (10th Cir. 2005)); *see also O Centro Espirita Beneficente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004) ("[A]ny preliminary injunction fitting within one of the disfavored categories must be more closely scrutinized to assure the exigencies of the case support the grant of a remedy that is extraordinary even in the normal course.").

B.   *Dormant Commerce Clause*

A dormant Commerce Clause challenge focuses on whether a state law improperly interferes with interstate commerce. *Direct Mktg. Ass'n v. Brohl*, 814 F.3d 1129, 1135 (10th Cir. 2016). "The primary concern is economic protectionism." *Id.* (citing *W. Lynn Creamery, Inc. v. Healy,* 512 U.S. 186, 192, (1994) ("Th[e] 'negative' aspect of the Commerce Clause prohibits economic protectionism—that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors."); *City of Philadelphia v. New Jersey.,* 437 U.S. 617, 624 (1978) ("The crucial inquiry, therefore, must be directed to determining whether [a state law] is basically a protectionist measure, or whether it can fairly be viewed as a law directed to legitimate local concerns, with effects upon interstate commerce that are only incidental."); *Kleinsmith v. Shurtleff,,* 571 F.3d 1033, 1039 (10th Cir. 2009) ("The Supreme Court's jurisprudence under the dormant Commerce Clause is driven by concern about economic protectionism.").

"A statute may discriminate against interstate commerce on its face or in practical effect." *Direct Mktg. Ass'n*, 814 F.3d at 1140 (citing *C & A Carbone, Inc. v. Town of Clarkstown*, 511 U.S. 383, 402 (1994)). "The burden to show discrimination rests on the party challenging the validity of the statute...." *Id.* (quoting *Hughes v. Oklahoma*, 441 U.S. 322, 336 (1979)). "If the party challenging the state law meets its burden to show that the statute is discriminatory, the law

'is virtually per se invalid.'" *Id.* (quoting *Organic Waste Sys., Inc. v. Dep't of Envtl. Quality*, 511 U.S. 93, 99 (1994)).

Generally, a "state regulation that discriminates against interstate commerce will survive constitutional challenge only if the state shows it advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives." *Id.* at 1136 (internal quotation marks and citations omitted).  Courts require that "justifications for discriminatory restrictions on commerce pass the 'strictest scrutiny.'" *Id.* (citing *Organic Waste Sys., Inc.*, 511 U.S. at 101).

"Nondiscriminatory state laws also can be invalidated when they impose an undue burden on interstate commerce." *Id.* (citing *Bibb v. Navajo Freight Lines, Inc.,* 359 U.S. 520, 529 (1959)).  "Where the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142 (1970).

III.   *Discussion*

As discussed above, because the Court has already addressed Plaintiffs' arguments relating to their state law claims, the Court will focus on Plaintiffs' dormant Commerce Clause claim.

Plaintiffs argue that all four factors weigh in favor of injunctive relief.  (Doc. 22) at 9–13, 21–23.  They seek an order for enjoining the Board's STR Ordinance moratorium.  (*Id.*) at 9.  In response, Defendant argues that Plaintiffs have failed to satisfy the heightened standard for disfavored injunctions, (Doc. 32) at 4, and that all four injunctive factors weigh against injunctive relief, (*id.*) at 4–7, 11–14.

A.   *Disfavored Injunction*

As a preliminary matter, Plaintiffs do not address the heightened standard required of a disfavored injunction.  The Court agrees with Defendant that injunctive relief in this case would upset the status quo or otherwise provide Plaintiffs with all the relief they could expect to win at trial.  Therefore, Plaintiffs' request for injunctive relief is subject to the heightened standard. Under this heightened standard and given the extraordinary relief granting an injunction provides, the Court concludes that Plaintiffs' right to relief is not clear and unequivocal.

B.   *Preliminary Injunctive Factors*

As previously stated, Plaintiffs must show that: (1) they have a substantial likelihood of prevailing on the merits; (2) they will suffer irreparable injury if they are denied the injunction; (3) their threatened injury outweighs the injury that the opposing party will suffer under the injunction; and (4) an injunction would not be adverse to the public interest.  *Country Kids 'N City Slicks,* 77 F.3d at 1283.  Moreover, their "right to relief must be clear and unequivocal." *Hunter*, 614 F. Appx. at 962.

1.   *Likelihood of Success on the Merits*

First, Plaintiffs argue that their dormant Commerce Clause claim is likely to succeed on the merits.  (Doc. 22) at 9–13.  In support of their claim, they direct the Court to the Fifth Circuit case *Hignell-Stark v. City of New Orleans*, 46 F.4th 317 (5th Cir. 2022).  (Doc. 22) at 10.

In *Hignell-Stark*, the City of New Orleans (City) commissioned a study to reevaluate its STR Policies.  *Hignell-Stark*, 46 F.4th at 321.  Based in part on the study, the City imposed a residential requirement for STRs.  *Id.*  This residential requirement policy "provided that no person could obtain a license to own such an STR unless the property was also the owner's primary residence." *Id.* (quotation marks and citation omitted).

The Fifth Circuit held that the residency requirement facially discriminated against interstate commerce because it "produces differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Id.* at 326 (internal quotation marks and citation omitted). The court reasoned that the residential requirement forbade out-of-state property owners from participating in the STR market altogether. *Id.* A facially discriminatory law will only be upheld if it advances a legitimate local purpose without any reasonable nondiscriminatory alternatives. *Id.* at 325 (citation omitted). Because the court determined that the City had many reasonable alternatives, it held that the City's residency requirement violated the dormant Commerce Clause. *Id.* at 326–29. Plaintiffs argue that this Court apply a substantially similar analysis in this case. (Doc. 22) at 9–13.

Looking to *Hignell-Stark*, the Court finds two meaningful differences between the City's policy in that case and the Board's temporary moratorium here. First, unlike *Hignell-Stark*—where the City imposed the residency requirement after studying the impacts of STRs—here, the Board's Amended Ordinance imposes a short, time-bound moratorium extension to give itself sufficient time "to study and analyze relevant issues related to Non-Owner Occupied STRs." (Doc. 22-1) at 5–6; *see also* (Doc. 22-11). The Board did not implement the moratorium as a result of the study. Instead, it is evaluating the results of the study to determine to what extent and how it will regulate STRs. *See* (*id.*).

Second, the City's residency requirement applied to *all* STRs—here, the Board's moratorium applies only to "newly acquired property being developed as an STR," not all Non-Owner Occupied STRs. (Doc. 22-1) at 6. Consequently, the moratorium does not appear to prohibit owners of Non-Owner Occupied property from renting their dwelling as an STR if they acquired and developed their property as an STR before the moratorium's effective date. Thus,

the moratorium does not discriminate against all out-of-state owners, rather it is temporarily limiting the number of Non-Owner Occupied STRs. Such a moratorium would appear to be subject to the *Pike* balancing test. Thus, it is not at all clear that the burden such a moratorium imposes on interstate commerce is clearly excessive in relation to the local benefits.

Due to the absence of Tenth Circuit precedent and the differences between this case and *Hignell-Stark*, the Court concludes that Plaintiffs do not clearly and unequivocally satisfy the likelihood-of-success-on-the-merits factor under the heightened standard.

### 2.  Irreparable Harm

Next, Plaintiffs argue that they will suffer immediate and irreparable harm for three reasons. (Doc. 22) at 21. First, Plaintiffs contend that a violation of the dormant Commerce Clause claim satisfies the irreparable-harm factor. (*Id.*) While perhaps true, Plaintiffs' argument is predicated on a determination that the Board's moratorium violates the dormant Commerce Clause. However, as discussed above, the Court has determined that Plaintiffs have failed to establish a substantial likelihood of success on the merits of this claim. Thus, they are not entitled to presumption of irreparable injury. *Schrier v. Univ. of Colo.*, 427 F.3d at 1266.

Second, Plaintiffs argue that the moratorium will impair their ability "to obtain a permit to utilize their property as an STR," thereby causing intangible harm that cannot be adequately quantified. (*Id.*) at 21–22. Specifically, Plaintiffs state that they will be deprived of "(i) the earned economic goodwill in its property, (ii) the ability to attract STR customers and earn market-share in the local STR market, and (iii) viable beneficial use of their private property assets." (*Id.*) at 22. The Court is unpersuaded. The cases Plaintiffs cite in support of their argument are readily distinguishable from this case. Plaintiffs cite *Dominion Video Satellite, Inc., v. Echostar Satellite Corp.*, 356 F.3d 1256 (10th Cir. 2004), in support of their claim that

they will suffer irreparable harm relating to goodwill and market-share.  (*Id.*) at 22.  In *Dominion*

*Video Satellite, Inc.*, however, the Tenth Circuit indicated that marketing a unique product was a

significant factor in determining irreparable harm.  356. F3d at 1263–64.  Here, there is no

indication that Plaintiffs' property would be a unique product in the STR market.  Plaintiffs'

argument that they will be deprived of viable beneficial use of their private property is equally

unavailing.  For example, Plaintiffs could make beneficial use of their property by renting it out

for more than 30 days.  The moratorium only prohibits them from renting out their property for

less than thirty days.  (Doc. 22-3) at 3, 5–6.

Third, Plaintiffs argue that given Defendant's sovereign immunity, "there is no right or

cause of action in which Plaintiffs could seek damages from Defendant." Plaintiffs, however, do

not establish that this is the case here.  The Eleventh Amendment appears to bar Plaintiffs from

suing the state or state officials for retrospective reliefs such as money damages.  *See Wood v.*

*Milyard*, 414 Fed. Appx. 103,  105 (10th Cir. 2011).  Plaintiffs, however, do not explain why

they would be unable to seek damages from the state officials in their individual capacity under

42 U.S.C. § 1983.[2] Section 1983 provides that

> [e]very person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State or Territory or the District of Columbia, subjects, or causes
> to be subjected, any citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an action at law, suit in
> equity, or other proper proceeding for redress…

42 U.S.C. § 1983.  Thus, it is not clear to this Court that the Plaintiffs will suffer irreparable

harm.  Moreover, even if Plaintiffs were able to satisfy the irreparable harm factor, it would not

---

[2] Plaintiffs' Second Amended Complaint did not bring a cause of action against the Santa Fe
County Commissioners in their individual capacity.  However, it is not apparent that they could
not have done so.

save them since, as mentioned above, they failed to satisfy the likelihood-of-success-on-the-merits factor.

### 3.  *Balance of Equities and Public Interest*

Finally, as to the third and fourth factors, Plaintiffs note that "[w]hen a government entity is the opposing party these two factors 'merge.'"  (Doc. 22) at 23 (citing *Nken*, 445 U.S. at 435). In support of their argument that these factors weigh in their favor, Plaintiffs rely on their contention that the Board's moratorium is unconstitutional.  (Doc. 22) at 23.  As discussed above, however, the Court has concluded that Plaintiffs have failed to clearly and unequivocally satisfy the substantial-likelihood-of-success-on-the-merits and irreparable-harm factors.  Absent a clear violation of the dormant Commerce Clause and irreparable harm, the Court concludes that the balance of equities and public interest do not weigh in Plaintiffs' favor.

## IV.  Conclusion

Noting the extraordinary remedy of granting injunctive relief and applying the required extra scrutiny to this type of injunctive relief, the Court finds that Plaintiffs have not clearly and unequivocally satisfied that all four factors tip in their favor.  Thus, this Court denies Plaintiffs' Motion for injunctive relief.

IT IS ORDERED.

UNITED STATES DISTRICT JUDGE